### THE WILLIAM F. ROMER.

#### CENTRAL HUDSON STEAMBOAT CO. v. NEW YORK CENT. & H. R. R. CO.

(District Court, S. D. New York. May 1, 1912.)

COLLISION (§ 105*)—VESSELS ENTERING AND LEAVING SLIPS—NEGLIGENCE OF WATCHMEN.

Libelant's steamer approached her slip on North River, with the intention of backing in, which maneuver, owing to her length, necessitated her covering a large part of the entrance to the adjoining slip beyond. Respondent's tug, with a car float on each side, was backing out of the latter slip, and a collision occurred between the steamer and one of the floats, although both vessels did what they could to prevent it after the situation was known. The steamer signaled by a long blast when a quarter of a mile away to give notice of her approach to the two watchmen maintained by libelant on the pier between the two slips, which was covered; but the signal was not heard on the tug, nor was the slip signal given by the latter heard by the steamer. *Held*, that libelant failed to sustain the burden of proof resting upon it to show fault on the part of the tug or floats, and entitle it to recover, and, further, that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its own watchmen were negligent in failing to note the movement of the tug and prevent the collision.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 105.*]

In Admiralty. Suit by the Central Hudson Steamboat Company, owner of the steamer William F. Romer, against the New York Central & Hudson River Railroad Company. Decree for respondent.

Kneeland, Harison & Hewitt, of New York City, for libelant.

Wallace, Butler & Brown, of New York City, for respondent.

WARD, Circuit Judge. May 26, 1910, the libelant's steamer William F. Romer arrived at Pier 24, North River, with the intention of backing into her berth on the north side. This is accomplished by making a line fast from a chock about 15 feet forward of the stern on the port side to the northwest corner of the pier and then swinging around. The steamer being 236 feet long and the pier 75 feet wide, she necessarily covers a large part of the slip between Piers 23 and 24 in performing this maneuver. The latter pier is covered. As the Romer was approaching Pier 24, the respondent's tug No. 17 backed out of the slip between 23 and 24, pulling two railroad floats lashed together, into the river. The Romer's engines, which were stopped at the time, were immediately put full speed astern. The tug went ahead to push the floats back; but seeing that, if she continued so doing, the Romer would run into her, threw off the line and backed across the Romer's bow. The northerly float came into collision with the Romer's port bow.

The witnesses of both parties made an entirely favorable impression on me. I believe that the Romer did blow a long blast at Desbrosses street, a quarter of a mile above the place of collision, although no one on No. 17 or on the floats heard it. This signal is not required by law, but is intended to notify the watchman on the pier to be ready to attend to the steamer's lines, as well as to give general notice of her approach. I also believe, though no one on the Romer heard them, that No. 17 gave the usual long slip whistle when she was starting to back out of the slip some 400 feet from the river end, and repeated this signal when near the end of the pier. The law required her to do this, and it was all she was bound to do.

On this state of facts I must hold that the libelant has failed to sustain the burden of proof lying on it. There is, in addition, a failure of care on the part of its watchmen imputable to it as negligence. The maneuver the Romer was about to make necessitated her covering a large part of the slip between 23 and 24. The libelant had two watchmen on the pier. The doors, or some of them, on the south side of the shed, were open, and it would have been perfectly easy for them to see whether anything was moving out, or about to move out, of the slip when the Romer was a quarter of a mile away. If this had been done, no collision would have happened.

The libel is dismissed, with costs.